UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UTGR, INC.
(d/b/a TWIN RIVER)

Plaintiff,

v.

SEIU, LOCAL 334

Defendant.

CA 07 318 S

Civil Action No. ____________
**REQUEST FOR EXPIDITED RELIEF**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION TO VACATE THE ARBITRATION RULING OR, IN THE ALTERNATIVE, TO STAY THE ARBITRATION**

Plaintiff UTGR, Inc. (d/b/a Twin River) (formerly Lincoln Park, hereinafter "Twin River"), brought this action pursuant to Section 301 of the Labor Management Relations Act of 1947 (29 U.S.C. §185) to stay the arbitration pending a determination by the National Labor Relations Board (the "Board") as to the question of whether the Players Club employees should accrete to SEIU, Local 334's bargaining unit.

## I. STATEMENT OF PERTINENT FACTS

The pertinent facts are set out in detail in the Plaintiff's complaint and motion, and will be summarized below.

Effective February 1, 2003, Twin River and the Union entered into a collective bargaining agreement ("Agreement"), covering certain classifications of Twin River's employees, which included, among other provisions, a procedure for processing and adjusting grievances, including binding arbitration as the final step thereof.

In the fall of 2005, Twin River began the development of a tracking system for patrons. The tracking system allows Twin River to track how individual patrons use their facilities, including how much each patron bets, which machines they use, which restaurants they prefer, when they visit, etc. This database of information is then used to tailor marketing programs to an individual patron, to enhance each patron's experience, and to better serve each patron based on his or her individual preferences and habits.

Prior to the development of the tracking system, Twin River utilized simple mailing lists of patrons for marketing purposes. The "Diamond Club" employees were responsible for maintaining such mailing lists and for implementing marketing campaigns. The Diamond Club employees reported to the Vice President of Marketing.

On January 9, 2006, Twin River established a "Players Club" to employ the tracking system and to gather information on patrons of Twin River. The Players Club is a continuation and enhancement of the Diamond Club. The Players Club employees are responsible for promotions, loyalty rewards, gathering proprietary information regarding a subset of patrons, and enrolling patrons in the rewards programs. The employees in the marketing department – formerly the Diamond Club and now the Players Club - historically have been excluded from the bargaining unit. Unlike members of the bargaining unit, the Players Club employees report to the Vice President of Marketing.

On February 8, 2006, the Union filed a grievance alleging that Twin River established and continues to staff Players Club positions in violation of the Agreement. Having failed to settle the grievance, on March 24, 2006, the Union filed a Demand for Arbitration with the American Arbitration Association. The Union's requested remedy

was to include the Players Club positions in the bargaining unit and to make the members whole in every way.

According to Article 12.4 of the Agreement, the powers of the Arbitrator with respect to interpretation and application of the agreement, and the remedies the Arbitrator may afford, are limited in the following respects:

> "The Arbitrator shall have the power after the hearing has been completed, to make any decision, award, finding or direction, issue any and all mandatory directions, orders and prohibitions as he may deem necessary and advisable in construing this Agreement or making any decision with reference to any breach thereof. However, the Arbitrator shall have no authority to add to, detract from, modify or disregard, any of the provisions of this Agreement. The decision and/or award of the Arbitrator shall be final and binding on both parties."

On March 20, 2007, the parties were notified that a hearing would take place on June 18, 2007 before the Arbitrator. During the June 18, 2007 hearing, Twin River moved to dismiss the grievance for the Arbitrator's lack of subject matter jurisdiction. The Union opposed Twin River's request. In a July 26, 2007 correspondence to the American Arbitration Association, Twin River pressed its request for a dismissal based on the Arbitrator's lack of subject matter jurisdiction. On August 3, 2007, the Union opposed Twin River's motion to dismiss. On August 13, 2007, the Arbitrator denied Twin River's motion to dismiss and held that he has subject matter jurisdiction over the grievance.

## II. ARGUMENT

### A. THE COURT SHOULD VACATE THE ARBITRATOR'S RULING

#### 1. This Matter Involves a Question of Accretion, Which Is Not Governed by the Agreement

The Union's grievance involves a question of accretion of the Players Club employees to the Union's bargaining unit. Accretion is the addition of a relatively small group of employees to an existing unit where these additional employees share a community of interest with the unit employees and have no separate identity. Safety Carrier, 306 NLRB 960, 969 (1992). Here, the Union is essentially arguing that the relatively small group of Players Club employees (less than twenty (20) employees) share a community of interest with the unit employees such that they should be included in the bargaining unit. This is clearly an issue of accretion, and not an issue requiring interpretation of the Agreement.

In Williams Transportation, 233 NLRB 837 (1977), the union filed a grievance alleging that the terms of the parties' contact should be applied to an employee occupying the shop office clerk position at the employer's facility. The grievance proceeded to arbitration, and the arbitration panel ultimately determined that the position was covered by the contract. The employer filed a petition seeking to clarify the bargaining unit to exclude the shop office clerk. The Board concluded that the decision of the arbitration panel did not appear to be based on an interpretation of contract, but instead appeared to constitute a determination that the position has been accreted to the unit. Id. at 838. The Board found dispositive that the "[job] classification is not mentioned in the unit description and there was no existing wage rate for the position." Id.

Here, as in Williams Transportation, there is no job classification in the Agreement pertaining to marketing employees, and no wage rate for marketing positions. See Article 38 of Exhibit A to the Complaint. Because the Players Club employees are marketing employees, this dispute is not based on an interpretation of the Agreement, but rather, is a question of accretion to the bargaining unit.

The Union incorrectly argues that the crux of this matter involves the interpretation and application of provisions of the Agreement that the parties intended to be arbitrable. Twin River does not dispute that the Agreement provides for arbitration of matters pertaining to interpretation of the Agreement. However, the Agreement does not cover employees who participate in marketing activities. As a result, there is no relevant provision of the Agreement for the Arbitrator to interpret.

**2. Questions of Statutory Policy Are Within the Province of the Board and Not the Arbitrator**

According to Article 12.4 of the Agreement, the powers of the arbitrator with respect to interpretation and application of the Agreement, and the remedies the arbitrator may afford in making its award, are limited to "construing this Agreement or making any decision with reference to any breach thereof." The subject matter of this dispute does not involve interpretation and application of the Agreement, thus it is not one that the parties agreed to submit to arbitration.

The controversy in question, that is, whether the Players Club employees should accrete to the Union's bargaining unit, is a question of statutory policy for the Board to resolve. The Board in Advanced Architectural Metals, Inc., 347 NLRB No.111 (2006) faced a situation where the employer argued that a unit clarification petition raised issues of accretion. The union argued that it did not. However, the Board held that "the issue of

whether accretion is involved and, if so, whether a lawful accretion has occurred, are themselves questions of statutory policy for the Board to resolve. Id. at 2, n.2.

Similarly, the Board in Williams Transportation held that questions regarding accretion are not matters for arbitration, but rather, are matters within the exclusive province of the Board to resolve. Williams Transportation, 233 NLRB at 838. See also, Marion Power Shovel Company, Inc., 230 NLRB No. 85 (1977) ("The determination of questions of representation, accretion, and appropriate unit do not depend upon contract interpretation but involve the application of statutory policy, standards, and criteria. These are matters for decision of the Board rather than an arbitrator.")

Although the Board's decisions in Advanced Architectural, Williams Transportation, and Marion involved prior arbitration awards, they nevertheless support the proposition that the Board has the sole province to determine issues of accretion, and that it is not proper for the arbitrator to hear such issues here. The Board has previously held in a decision that did not involve a prior arbitration award, that it would be a "wasteful exercise" to require the parties to expend additional time and resources and suffer additional delays by pursuing an accretion question in arbitration when the employer would then likely file a unit clarification petition seeking to prevent the enforcement of the arbitration award. See Ziegler Inc., 333 NLRB No. 114 (2001) (agreeing to entertain an employer's petition seeking to clarify the bargaining unit to exclude certain employees in order to prevent the pending grievance from ultimately resulting in an incongruous arbitration award.)

Additionally, the Board expressly stated that parties are not required to exhaust the step of arbitration prior to bringing an accretion question to the Board. In Tweddle

Ligho, Inc., 337 NLRB No. 102 (2002), the Board agreed with an employer who contended that the Board has exclusive jurisdiction over a case that posed the question of whether new employees are to be accreted to the contractual bargaining unit. The Board rejected the argument (presented in dissent) that the issue should be deferred to arbitration, and if representation issues remain, reviewed by the Board. Rather, the Board stated that it saw "no need to adopt this two-step process and thereby delay the handling of this case which presents, at its core, representation issues."

Here, the union's grievance presents an issue of whether the Players Club employees should accrete to the Union's bargaining unit. This is not a question regarding interpretation of the Agreement. As suggested in both Ziegler and Tweddle, it would be a "wasteful exercise" to require the parties to pursue a "two-step process" whereby they debate this question in arbitration when they will ultimately be required to pursue this question in front of the Board, which has exclusive jurisdiction over questions of accretion.

Cases cited by the Union in their letter opposing Twin River's motion to dismiss do not require a different result. The Union argues incorrectly that arbitrators share concurrent jurisdiction with the Board over matters of accretion. However, the decisions cited by the Union do not support this assertion. For example, the Union cites International Ass'n of Machinists & Aerospace Workers, Local 2201 v. International Air Serv. of Puerto Rico, Inc., 636 F.2d 848 (1st Cir. 1980), for the proposition that matters relating to union representation are within the concurrent jurisdiction of arbitrators and the Board. The International Ass'n decision did not specifically discuss questions of accretion or state that an arbitrator had concurrent jurisdiction over accretion questions.

Rather, the decision focused on preliminary questions of contract interpretation that an arbitrator could appropriately review: "Each of these issues, before it rises to a statutory level, presents questions of fact and contractual interpretation." Id. at 849.

The same argument holds true for the Union's use of the decision in Enterprise Publishing Co., v. NLRB, 493 F.2d 1024 (1st Cir. 1974), where the court held that deferral of a dispute to arbitration was not an abuse of discretion where "the contract and its meaning in the present circumstances lie at the center of the dispute." Id. at 1026. The Enterprise Publishing decision also did not address the issue of accretion to a bargaining unit.

In summary, the Agreement and its meaning do not lie at the center of this dispute. The question presented by the Union's grievance is whether the Players Club employees can be accreted to the bargaining unit. As discussed above, the Board has exclusive jurisdiction over matters of accretion. Thus, the court should vacate the Arbitrator's ruling.

**B. THE COURT SHOULD STAY THE ARBITRATION**

The court should stay the arbitration pending a finding by the Board as to whether the Players Club employees are subject to accretion to the bargaining unit. Section 7 of the Norris-LaGuardia Act (29 U.S.C. §107) ("Section 7") governs a suit to enjoin a labor arbitration. Tejidos De Coamo v. International Lades' Garment Workers' Union, 22 F.3d 8, 13 (1994). Section 7 requires a factual finding that (i) unlawful acts are threatened, (ii) substantial and irreparable injury will follow, (iii) the balance of harm on each element of relief favors the complainant, and (iv) the complainant has no adequate remedy at law. See id.

### 1. Unlawful Acts Are Threatened if the Arbitration Continues

Unlawful acts are threatened if the arbitration continues because, as discussed above, the arbitrator does not have jurisdiction to determine whether the Players Club employees should accrete to the bargaining unit.

### 2. Twin River Will Incur Substantial and Irreparable Injury to its Property if the Court Does Not Grant its Motion to Stay the Arbitration

Section 7 requires a finding by the court that "substantial and irreparable injury to complainant's property will follow" unless a stay of arbitration is issued. See Tejidos, 22 F.3d at 13. Here, Twin River will incur substantial and irreparable injury to its property if the court does not grant its motion to stay the pending arbitration because a contrary arbitration award will result in disclosure to the Union of Twin River's confidential and proprietary information obtained through use of the patron tracking system. The Players Club employees have access to Twin River's database of confidential and proprietary patron-related information, while non-Players Club employees who are represented by the bargaining unit do not have access to such information. In fact, the Players Club employees are required to sign a "Guest List Confidentiality Policy," while the non-Players Club employees are not required to sign a confidentiality policy. See Exhibit C to the Compliant.

In the event that the arbitration continues, and the arbitrator decides that the Players Club employees are part of the bargaining-unit, the Union will thereby have access to Twin River's confidential and proprietary information during the pendency of any appeal to the Board. Such a compromise of Twin River's confidential and

proprietary information would clearly constitute a substantial and irreparable injury to Twin River's property.

**3. The Balance of Harm on Each Element of Relief Favors Twin River**

As discussed above, if the court does not grant Twin River's motion to vacate, or alternatively, grant its motion to stay the arbitration, Twin River faces substantial and irreparable injury due to unlawful disclosure of its confidential and proprietary information to the Union. The Union, however, faces no such harm and can simply choose to pursue its grievance in front of the Board.

**4. Twin River Has No Adequate Remedy at Law**

Given the risk of disclosure of Twin River's confidential and proprietary information, the only appropriate remedies are equitable in nature (i.e., an order vacating the arbitrator's decision or staying the arbitration). Thus, Twin River has no adequate remedy at law.

### C. THE COURT SHOULD GRANT EXPIDITED RELIEF

Twin River requests expedited relief due to the fact that an arbitration hearing is scheduled for August 31, 2006. The arbitrator issued his ruling on August 13, 2006, which did not allow for an earlier motion by Twin River.

## III. CONCLUSION

For all of the reasons discussed in this memorandum, this Court should grant, on an expedited basis, the Plaintiff's motion to vacate the arbitrator's ruling, or alternatively, to stay the arbitration.

UTGR, Inc. (d/b/a Lincoln Park).
By its Attorney,

David D. Barricelli (R.I Bar #4763)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
dbarricelli@haslaw.com

Dated: August 21, 2007

**CERTIFICATION**

To:

Marc B. Gursky, Esq.
Gursky Law Associates
420 Scrabbletown Road
Suite C
North Kingstown, RI 02852

I hereby certify that I mailed a copy of the within memorandum to counsel of record, as above, on the 21st day of August, 2007