UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UTGR, INC. (d/b/a TWIN RIVER) Plaintiff, | |
| v. | C.A. No.: 07-318-S |
| SEIU, LOCAL 334 Defendant. | |

**SEIU, LOCAL 334'S OBJECTION TO PLAINTIFF'S MOTION TO VACATE THE ARBITRATION RULING OR, IN THE ALTERNATIVE, TO STAY THE ARBITRATION**

## INTRODUCTION

Defendant SEIU, Local 334 (hereinafter "SEIU" or "Union") hereby objects to Plaintiff UTGR, Inc.'s (d/b/a Twin River) (hereinafter "Twin River") Motion to Vacate the Arbitration Ruling or, in the Alternative, to Stay the Arbitration. On August 13, 2007, Arbitrator Richard G. Boulanger, Esq., correctly ruled that he has subject matter jurisdiction to hear this grievance arbitration because the crux of the matter involves the interpretation and application of contract provisions that the parties intended to be arbitrable. The Arbitrator's ruling must be affirmed because it "draws its essence" from the collective bargaining agreement and the Arbitrator properly concluded that he shares concurrent jurisdiction with the Nation Labor Relations Board (hereinafter "NLRB") over the matters raised in this grievance.

This Court also should deny Plaintiff's motion to stay the arbitration. Twin River failed to present "forceful" evidence that the parties intended this grievance to be outside the grievance process. In the alternative, Twin River failed to satisfy the stringent requirements of Section 7 of

the Norris-LaGuardia Act because: (1) there have been no unlawful acts threatened by SEIU; and (2) Twin River will not suffer substantial and irreparable harm if SEIU has access to information about the patrons gaming and eating preferences. 29 U.S.C. §107.

## STATEMENT OF FACTS

SEIU and Twin River are parties to a collective bargaining agreement (hereinafter "CBA") governing terms and conditions of employment. The CBA recognizes SEIU as the exclusive bargaining representative for all employees employed in the Mutuel Department and all auditors and validators in the Gaming Department at Twin River's Lincoln, Rhode Island facility. The CBA, among other provisions, contains a procedure for processing grievances, which includes binding arbitration as the final step.

On February 8, 2006, SEIU filed a grievance stating that Twin River "established and continued to staff players club positions in violation of Articles 1, 4, 5, and 15 and all other pertinent provisions of the contract between [Twin River] and SEIU Local 334." Attached hereto as Exhibit A. As for corrective actions, SEIU requested that the players club positions be included in the union, demanded Twin River to cease and desist the hiring of non-union members for these positions, commanded Twin River to negotiate in good faith, and asked that the union and its members be made whole.

After failing to reach a settlement in this grievance, SEIU filed a Demand for Arbitration, with the American Arbitration Association (hereinafter "AAA") on March 24, 2006, pursuant to Article 12 of the CBA. Again, SEIU stated that Twin River violated Articles 1, 4, 5, and 15 and all other pertinent provisions of the CBA.

On March 20, 2007, the AAA notified the parties that a hearing would be held on June

18, 2007, before Arbitrator Boulanger. On June 18, 2007, over a year since SEIU filed its Demand for Arbitration and almost three months since the AAA gave notice of the hearing, Twin River, for the first time, challenged the Arbitrator's authority to hear this grievance arbitration. At the hearing the Arbitrator denied Twin River's request for a ruling on the issue of subject matter jurisdiction before the parties presented evidence. Rather, the Arbitrator stated that he would reserve the issue until the conclusion of evidence. On July 26, 2007, Twin River wrote a letter to the Arbitrator further challenging his authority to hear this matter and ask that this matter be dismissed. Likewise, on August 3, 2007, SEIU sent a letter opposing Twin River's contention that the Arbitrator lacks subject matter jurisdiction. On August 13, 2007, the Arbitrator denied Twin River's motion to dismiss, in writing this time, and held that he has proper subject matter jurisdiction to hear this matter. Furthermore, on August 29, 2007, the Arbitrator denied Twin River's Request to Stay the Arbitration.

In response to the Arbitrator's denial of its motion to dismiss, Twin River filed a Motion to Vacate the Arbitration Ruling, or in the Alternative, Stay the Arbitration with this Court on August 22, 2007. The hearing scheduled for August 31, 2007, took place pursuant to the Court's directions. However, the hearing dated for September 5, 2007 was canceled.

## ARGUMENT

### I. THE COURT SHOULD DENY PLAINTIFF'S MOTION TO VACATE THE ARBITRATION RULING

#### A. The Court Must Afford the Arbitrator's Ruling Great Deference Because it "Draws its Essence" from the CBA

The standard of review for arbitration rulings is highly deferential. The U.S. Supreme Court noted that:

> [u]nder well-established standards for the review of labor arbitration awards, a

> federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one. When the parties include an arbitration clause in their collective-bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless, the arbitral decision does not "draw it essence from the collective bargaining agreement," a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous.

*W.R. Grace & Co. v. Local Union 759, Int'l Union of Rubber Workers*, 461 U.S. 757, 764 (1983). In *United Paperworks International Union v. Misco, Inc.*, 484 U.S. 29 (1987), the Court further defined the term "draws its essence" from the contract. The Court held that in terms of an arbitrator's application and interpretation of the contract, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that [even if] a court is convinced he committed serious error does not suffice to overturn his decision. *Misco*, 484 U.S. at 46.

Based on this highly deferential standard of review, plaintiff's motion should be dismissed because the Arbitrator's ruling clearly "draws its essence" from the CBA. First, the Arbitrator's ruling "draws its essence" from the CBA because the CBA grants the Arbitrator broad jurisdictional powers. Article 12.4 states:

> [t]he Arbitrator shall have the power after the hearing has been completed, to make any decision, award, finding or direction, issue any and all mandatory directions, orders, and prohibitions as he may deem necessary and advisable in construing this Agreement or making any decision with reference to any breach thereof. However, the Arbitrator shall have no authority to add to, detract from, modify or disregard, any of the provisions of this Agreement. The decision and/or award of the Arbitrator shall be final and binding on both parties.

Here, the Arbitrator's ruling correctly points out that Article 12.4 grants him broad jurisdictional powers because not only may he issue a typical "decision, award and finding," but he may also "issue any mandatory directions, orders, and prohibitions as he may deem necessary and

advisable in construing this Agreement..." See Arbitrator's Decisions, attached hereto as Exhibit B.

Second, the Arbitrator's ruling "draws its essence" from the CBA because SEIU's grievance satisfies the grievance definition as set forth in Article 12.1. Article 12.1 provides:

> [a] grievance shall mean a complaint by an employee or a complaint by the Union that there has been a violation, misrepresentation, or a misapplication of the provisions of this Agreement or violation of any established policy or practice. In addition, employees covered by this Agreement shall have the right to grieve any disciplinary action (see Article 27).

Based on the provisions cited by SEIU in its Demand, the Arbitrator concluded that it is clear that the Union has the right to challenge Twin River's decision that the Players Club employees are a new and independent job classification. This conclusion "draws its essence" from the CBA because Article 1.3 greatly restricts the ability of non-bargaining unit employees, such as the new Players Club employees to perform bargaining unit work. Moreover, even if the Players Club employees are deemed to be performing a new category of work, Section 15.4 of the CBA demands that the parties negotiate the "pay scales" for those employees. Accordingly, the Arbitrator, pursuant to Article 12.4, concluded that he has the authority to hear this matter because he has the power "to interpret contract articles cited and referenced by the Union as applied to the facts of the parties' dispute so long as he does not 'add to, detract from, modify or disregard, any of the provisions of this Agreement.'" Exhibit B.

**B. The Arbitrator Correctly Ruled that this Matter Directly Involves Issues of Contract Interpretation and Contract Application Which is Arbitrable**

Twin River attempts to guise issues of contract interpretation and application as solely

issues of accretion. In *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960), the Supreme Court established a basic test for determining whether a grievance should be heard in arbitration. See also *A.T.&T. Technologies, Inc. v. Communications Workers of America*, 376 U.S. 543 (1964). The Court found that if there is an arbitration clause in the parties' contract, the test is whether there is "an express provision excluding a particular grievance from arbitration." If not, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id*. at 585.

First, SEIU and Twin River fully intended that disputes over whether non-bargaining unit employees were performing bargaining unit work would be heard in arbitration. Second, there is no provision within the CBA expressly excluding this issue from arbitration. Finally, Twin River failed to present any "forceful evidence" that this dispute was intended to be excluded from arbitration.

Moreover, Twin River is asking the Court to vacate the arbitrator's ruling and, in the alternative stay the arbitration despite the fact that none of the cases it cites support its contention that this matter is outside the subject matter jurisdiction of the Arbitrator. Twin River erroneously cites *Williams Transportation*, 233 NLRB 837 (1977); however, that case does not stand for the proposition that this matter is not arbitrable. Rather, in that case, the NLRB merely held that issue of accretion, where the contract does not mention the disputed job classification or wage rate, is within the "province of this Board to make." *Williams Transportation*, 233 NLRB at 838. Therefore, NLRB did not hold that such issues were not arbitrable or that this arbitration should be stayed until the NLRB makes its determination, especially if, as is the case here, there are issues of contract interpretation and application. In fact, the NLRB did not

address the issue of arbitrability at all.

*Williams Transportation*, also is distinguishable from the matter at hand because the job classification of the office clerk in that case had been historically excluded from the bargaining unit, where as here, the Players Club positions and job classification are newly created. SEIU also contends that the Players Club positions should not be a new job classification because they perform Mutuel Clerk and Validator duties. Additionally, unlike in *Williams Transportation*, the CBA here contains a provision requiring that Twin River negotiate with SEIU over the creation of a new job classification. Article 15.4 states:

> [i]n the event new categories of work, the Employer and the Union agree to negotiate pay scales for those new categories in fair and proper relationship to those now set forth in this Agreement, with due consideration for the amount of skill required to competently fill these new positions.

Twin River clearly violated Article 15.4 because it unilaterally determined that the Players Club positions were a new category of work. Furthermore, any argument that these positions are part of the marketing department brings up questions contract interpretation and fact. Therefore, this matter, unlike *Williams Transportation*, clearly involves issues of contract interpretation and application which are certainly arbitrable.

### C. Twin River Did Not Present Evidence that the Players Club Employees are Performing Marketing Department Work

Twin River claims that the this grievance simply raises an issue of accretion because the Players Club positions are part of the Marketing Department and completely dismisses SEIU's factual dispute over the work being performed by these employees. Moreover, Twin River failed to submit any affidavits about the job duties performed by the Players Club employees. Twin River merely states in its facts that the Players Club employees operate a "tracking system,"

which tracks each registered patrons' activities while at the facility. Accordingly, Twin Rivers did not present any evidence to support its claim that the Players Club employees are part of the Marketing Department rather than the Mutuel Department or the Gaming Department. In an attempt to mask this grievance solely as a issue of accretion, Twin River essentially is asking the Court to take its word that there are no questions of fact about the job duties performed by the Players Club employees or whether they are indeed performing bargaining unit work. However, theses questions of fact and contract interpretation do exist and if the arbitration continues these questions will be flushed out and resolved.

### D. Matters Concerning Union Representation Fall Within the Concurrent Jurisdiction of the NLRB

Issues of union representation, such as here, are within the concurrent jurisdiction of the NLRB. *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 268, 272 (1964). In *International Ass'n of Machinists & Aerospace Workers, Local 2201 v. International Air Serv. of Puerto Rico, Inc.*, 636 F.2d 848 (1st Cir. 1980), the First Circuit Court set forth the reason for permitting arbitration in union representation matters:

> while it is possible to construe the relief sought [in this case] as calling for a determination of the scope of the bargaining unit represented, a task committed exclusively to the [NLRB], labor policy supplies a preference for interpreting questions as arbitrable in such a situation. As this court has noted as to analogous issues:
>
>> Each of these issues, before it rises to a statutory level, presents questions of fact and contractual interpretation. Since the [NLRB] will not defer to an arbitrator's decision which is repugnant to the [National Labor Relations Act], no prejudice will result [from] allowing an arbitrator to clear up the factual and contractual underbrush and, perhaps, remove any need to consider the statute.

*Id*. at 849-50 (quoting *Enterprise Publishing Co. v. NLRB*, 493 F.2d 1024, 1027 (1st Cir. 1974)). In that case, the union brought an civil action under §301 of the Taft-Hartley Act, codified 29

U.S.C.S. §185(a), to compel the employer to arbitrate a grievance concerning the hiring of new employees without notifying the union. The Court held that the issue of whether the new employees fell within the bargaining unit went to the merits of the union's claim and that the issue was for the Arbitrator to decide.

Moreover, the NLRB, in *Combustion Eng'g, Inc.*, 195 N.L.R.B. 909 (1972), has recognized that:

> it is by now well settled that there is... a duality of issue where, as here, the matter in dispute is whether a collective-bargaining contract should be extended to a new operation, the issue before the arbitrator being whether the parties intended their contract to apply to such operation and... whether the new employees might properly be treated as an accretion to the existing unit under criteria developed by the [NLRB].

*Id*. at 910. See also *Hershey Food Corp.*, 208 N.L.R.B. 452, 457 (1974). In that case, the arbitrator's award regarded the question of whether the existing collective bargaining agreement was intended to or could be interpreted as covering the new employees who were hired after its effective date. The NLRB held that it was a question for the arbitrator to decide, but the arbitrator's decision did not govern the Board's disposition of the matter.

Furthermore, in *Raley's, Inc*., 143 N.L.R.B. 256 (1997), the NLRB observed:

> The arbitrator decided essentially the same issue as to the scope of the contract that confronted the [NLRB] in the instant representation case. We perceive nothing in the arbitrator's decision, relating to the contract coverage of janitors and bottle sorters, that is repugnant to the "purposes and policies of the Act." Indeed, in circumstances substantially identical with those in the instant case, the [NLRB] held that the employees involved were an accretion to the contract union and were therefore covered by the contract. In addition, the arbitration proceeding was fair and regular and free from any procedural infirmity which might render the award unacceptable.

*Id*. at 1349-50 (footnotes omitted).

*Marion Power Shovel Co.*, 230 N.L.R.B. 576 (1977), which Twin River cites in support

of its argument, does not stand for the proposition that the Arbitrator does not have proper subject matter jurisdiction. Rather, *Marion Power Shovel*, like *Combustion Eng'g*, merely supports the rule that the NLRB is not bound by the arbitrator's findings and conclusions on questions of accretion. The NLRB held that where resolution of the grievance turns on statutory policy, it will not defer to the arbitration award. *Id.* at 577-8. Moreover, *Marion Power Shovel*, is distinguishable from the matter at hand because in that case the arbitrator had already issued a decision in the case.

Twin River also erroneously cites *Advanced Architectural Metals*, 347 NLRB No. 111, (2006), for the proposition that an issue of accretion is a question of statutory policy for the NLRB to solely resolve. Rather, in that case, the NLRB did not hold that issues of representation and contract interpretation are not arbitrable. The NLRB only held that it would not defer to an arbitrator on issues of statutory policy. That case merely restated that the NLRB's "long-held view is that it generally does not defer to arbitration in representation proceedings except in the narrow class of cases where the sole and dispositive issue is one of contract interpretation." *Id*. at 6. Therefore, there is nothing in that case that disproves SEIU's contention that the issue of this grievance is within the concurrent jurisdiction of the NLRB and the Arbitrator.

In conclusion, this dispute is arbitrable because it does not fall within the exclusive jurisdiction of the NLRB. Rather, concurrent jurisdiction exists between arbitrators and the NLRB over whether collective bargaining agreements should be extended to new operations and new employees. Accordingly, the Court should deny Twin River's Motion to Vacate.

**E. Twin River's Challenge to the Arbitrator's Subject Matter Jurisdiction was Untimely**

Twin River's delay in challenging the Arbitrator's authority to hearing this matter contravenes the efficient and expeditious nature of arbitration. Here, SEIU filed a Demand for Arbitration on March 24, 2006, after the parties failed to resolve this grievance. However, it was not until June 18, 2007, over a year later, that Twin River, for the first time, challenged the Arbitrator's subject matter jurisdiction. Additionally, Twin River waited nearly three months after notification of the hearing date to challenge the Arbitrator's ability to hearing this matter. In light of the expedited nature of arbitration, Twin River should have challenged the Arbitrator's subject matter jurisdiction prior to the first hearing date so that this matter could have been resolved in a more timely manner.

## II. THE COURT SHOULD DENY PLAINTIFF'S STAY OF ARBITRATION

### A. The CBA Clearly Contains an Agreement to Arbitrate Grievances and There is No Expressed Agreement or "Forceful" Evidence Excluding this Claim From Arbitration.

The Court should deny Plaintiff's Stay of Arbitration and hold Plaintiff to its contractual promise to arbitrate and to be bound by the arbitrator's award. Courts have the authority to consider whether the arbitration agreement between an employer and a union should be enforced through judicial order pursuant to Section 301(a) of the Labor Management Relations Act. *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 451 (1957). Federal law equivocally favors the enforcement of agreements to arbitrate. See *United Steelworkers of America v. America Mfg. Co.*, 363 U.S. 564 (1960); *Warrior & Gulf Navigation Co.*, 363 U.S. 585; *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). The U.S. Supreme Court held there is a presumption in favor of arbitrability and that only a patently apparent lack of arbitrability will defeat an arbitration demand which is resisted by a

stay of arbitration. *AT&T Technology, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986).

In general, the Norris-LaGuardia Act prohibits federal courts from issuing temporary or permanent injunctions in any case involving or growing out of a labor dispute unless the moving party meets the stringent criteria of Section 7. 29 U.S.C. §101 and 29 U.S.C. §107. The U.S. Supreme Court, however, has carved out certain exceptions to the Norris-LaGuardia Act in relation to arbitration. *Lincoln Mills*, 353 U.S. 458-9. In that case, the U.S. Supreme Court held that jurisdiction to compel enforcement of collective bargaining agreement arbitration clauses was not withdrawn by the Norris-La Guardia Act. The Court reasoned that "[t]he congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes being clear, there is no reason to submit them to the requirements of § 7 of the Norris-LaGuradia Act. *Id*.

A promise to arbitrate within a collective bargaining agreement should be enforced if the Court finds the substantive issue that is the crux of the grievance is arbitrable and an arbitrator would otherwise have jurisdiction over the controversy. There is a three-part test to determine whether a court should order arbitration: (1) whether there is an agreement to arbitrate grievances; (2) whether the agreement expressly excludes the subject of the dispute from arbitration; and (3) whether there is other "most forceful evidence of a purpose to exclude the claim from arbitration." *United Steelworkers of America*, 363 U.S. at 585. If the answer to the first part is "yes" and the answer to both remaining questions are "no," then the court should order arbitration. *Id*.

Here, the final step of the grievance process clearly states that the parties agree to arbitrate unresolved grievance. Article 12.2 provides "*Step 4*: If the decision of the Employer is

not acceptable to the Union, then the Union may request an assignment of an arbitrator by the American Arbitrator Association is accordance with its rules and regulations." Since, the CBA clearly contains an agreement to arbitrate, then only an expressed provision or the "most forceful" evidence excluding this issue may rebut the presumption of arbitrability.

Twin River can not rebut the presumption of arbitrability. First, there is no provision within the CBA that expressly excludes issues of contract interpretation and application from arbitration. Additionally, arguing in the alternative, there is no expressed provision in the CBA excluding the arbitration of representation and bargaining unit scope matters. Second, Twin River failed to present any "forceful evidence" that this dispute was intended to be excluded from arbitration. As stated above, this dispute satisfies Article 12.1's grievance definition because at the heart of SEIU's contention is Twin River's violation, misrepresentation and misapplication of the CBA. Moreover, any evidence put forth by Twin River that this issue is within the exclusive jurisdiction of the NLRB is not enough to satisfy this test because it does not rise above the level of conflicting evidence since it is susceptible to more than one interpretation. Here, at the very least, it is clear that there is conflicting evidence about whether this issue is arbitrable based on the Arbitrator's ruling in favor of arbitration.

**B. In the Alternative, Twin River Does Not Satisfy the Strict Requirements of Section 7 of the Norris-LaGuardia Act**

Twin River cannot satisfy the requirements for injunctive relief under Section 7 of the Norris-LaGuardia Act. Section 7 states no court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor

dispute except after a finding of the court that: (1) unlawful acts have been threatened and will be committed unless restrained; (2) substantial and irreparable injury to complainant's property will follow; (3) as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendant by the granting of the relief; (4) complainant has no adequate remedy at law; and (5) the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection. 29 U.S.C. §107.

First, no unlawful acts have been threatened if the arbitration continues. The words "unlawful acts" do not constitute reference to conduct generally considered to be illegal but refer directly to acts of violence. *Wilson & Co. v. Birl*, 105 F.2d 948 (3rd Cir. 1939). Here, Twin River erroneously alleges that an unlawful act will occur if the arbitration continues because the arbitrator does not have proper subject matter jurisdiction. This is not an act of violence, rather it is a question of law. Moreover, it is clearly not the type of act which Section 7 seeks to prevent.

Second, if the arbitration continues there will be no substantial and irreparable harm caused to Twin River's property. Substantial and irreparable harm does not exist in this case because if SEIU prevails at arbitration and the arbitrator determines that the Players Club positions are part of the bargaining unit then Twin River will simply have to require the union members to sign a "Guest List Confidentiality Policy" sheet if they are going to have access to this information. Moreover, this information concerns a patron's use of the facilities, including what machines they use and which restaurants they prefer. This information, unlike bank account numbers or social security numbers, does not rises to a level of confidentiality necessary

to cause substantial and irreparable harm if seen by a union member.

Third, Twin River erroneously claims that the balance of harm favors staying the arbitration. However, Twin River merely points to the disclosure of the patron preference information which, as described above, would not harm Twin River because the information is not confidential.

Fourth, Twin River wrongly claims that given the confidential nature of the patron preference information, the only appropriate remedies are equitable in nature. Again, this information about the patrons' gaming and restaurant preferences is not confidential and its disclosure to the union members would not be unlawful.

Finally, Twin River fails to address the final element of Section 7, which states the public officers charged with the duty to protect complainant's property must be unable or unwilling to furnish adequate protection. Section 7 clearly requires that all elements be satisfied in order for a court to issue an injunction because its includes the word "and" instead of "or." Moreover, if this patron preference information is disclosed to the union, the police would provide ample protection to Twin River's property.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's Motion to Vacate the Arbitration Ruling or, in the Alternative, to Stay the Arbitration.

Respectfully submitted,
SEIU Local 334,
By its attorneys,

/s/ Elizabeth Wiens
Marc B. Gursky (#2818)
Elizabeth A. Wiens (#6827)
Ryan C. Hurley (#7539)
Gursky Law Associates
420 Scrabbletown Rd., Ste. C
North Kingston, RI 02852
(401) 294-4700
(401) 294-4702 (facsimile)

## CERTIFICATION

I hereby certify that I electronically filed the within Objection on September 7, 2007. The Objection is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the individual below has been effectuated by electronic means.

David D. Barricelli
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903

/s/ Elizabeth Wiens