**IN THE MATTER OF
GRIEVANCE ARBITRATION
BETWEEN**

| | |
|---|---|
| **SEIU, LOCAL 334**<br><br>**-AND-**<br><br>**LINCOLN PARK** | **AMERICAN ARBITRATION ASSOCIATIO]**<br>**CASE NO: 11 300 00691 06** |

**RULING ON THE EMPLOYER'S MOTION TO DISMISS**

The Employer's Motion to Dismiss is denied. The arbitrator has subject matter jurisdiction over the grievance.

**Dated: 8/13/07**

**Richard G. Boulanger, Esq.**

AUG. 13. 2007 5:08PM AMERICAN ARBITRATION ASSOC. Case 1:07-cv-00318-S-DLM Document 1 Filed 08/22/2007 NO. 6775 Page 2 of 10 P. 4/12

**IN THE MATTER OF**
**GRIEVANCE ARBITRATION**
**BETWEEN**

| | |
|---|---|
| **SEIU, LOCAL 334**<br><br>**-AND-**<br><br>**LINCOLN PARK** | **AMERICAN ARBITRATION ASSOCIATIO[N]**<br>**CASE NO: 11 300 00691 06** |

At the June 18, 2007 arbitration hearing, the Employer moved to dismiss the grievance for the arbitrator's lack of subject matter jurisdiction. The Union opposed the Employer's request. The undersigned arbitrator denied the Employer's request reserving on the issue until the conclusion of the parties' presentation of evidence. In a July 26, 2007 correspondence to the American Arbitration Association, the Employer pressed its request for a dismissal based on the arbitrator's lack of subject matter jurisdiction.

The Employer contends that the National Labor Relations Board has exclusive subject matter jurisdiction over the issues raised by the Union's grievance which the Employer contends is an attempt to accrete its Players Club Representative employees to the bargaining unit. The Employer cites authority in support of its argument. (See Marion Power Shovel Company, Inc., 230 NLRB No. 85, 95LRRM 1339 (1977); Williams Transportation Company, 233 NLRB No. 125, 96 LRRM 1597 (1977); Zeigler, Inc., 333 NLRB No. 114

Case 1:07-cv-00318-S-DLM Document 1 Filed 08/22/2007 Page 3 of 10

(2001); and Tweddle Litho, Inc., 337 NLRB No. 102 (2002).

On August 3, 2007, the Union opposed the Employer's Motion to Dismiss. It contends that at the very least the arbitrator has concurrent subject matter jurisdiction over the grievance issues with the National Labor Relations Board because the grievance raises viable issues of contract interpretation. The Union cites authority in support of its assertions. (See United Steelworkers Union v. Warrior and Gulf, 363 U.S. 574 (1960); A.T.&T. Technologies, Inc. v. Communications Workers of America, 376 U.S. 543 (1964); Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 268, 272 (1964); International Ass'n of Machinists & Aerospace Workers, Local 2201 v. International Air Serv. Of Puerto Rico, Inc., 636 F.2d. 848 (1st Cir. 1980); Enterprise Publishing Co. v. NLRB, 493 F.2d 1024, 1027 (1st Cir. 1974); Combustion Eng'g, Inc., 195 NLRB 909 (1972); Hershey Food Corp., 208 N.L.R.B. 452, 457 (1974); Raley's Inc., N.L.R.B. 256 (1997); and Marion Power Shovel Co., Supra.

The Union's grievance contention is that the Players Club Representative, the contested job classification, is a Validator or Auditor by another title as covered by the Recognition article and therefore, wages, hours and working conditions for the Players Club Representative classification must

AUG. 15. 2007 Case 1:07-cv-00318-S-DLM AMERICAN ARBITRATION ASSOC. Document 1 Filed 08/22/2007 NO. Page 4 of 10

be bargained with the Union. The Union suggests that the Employer cannot erode the bargaining unit, codified in Article 1, by changing the classification titles of employees, and assigning them to perform recognized and accepted bargaining unit work. The Employer argues that the issue of whether or not the Players Club Representative can be accreted to the bargaining unit and derivatively the Recognition article is a matter of exclusive subject matter jurisdiction by the National Labor Relations Board.

In order to resolve the parties' threshold dispute, it is necessary to examine the grievance procedure and substantive provisions implicated by the grievance. Article 12 (**GRIEVANCE AND ARBITRATION PROCEDURE**) provides in pertinent part as follows:

> **12.1** A grievance shall mean a complaint by an employee or a complaint by the Union that there has been a violation, misrepresentation, or a misapplication of the provisions of this Agreement or violation of any established policy or practice. In addition, employees covered by this Agreement shall have the right to grieve any disciplinary action (see Article 27).

The arbitrator's authority to hear and decide grievances is specified in Article 12, §12.4 as follows:

> **12.4** The Arbitrator shall have the power after the hearing has been completed, to make any decision, award, finding or direction, issue any and all mandatory directions, orders, and prohibitions as he may deem necessary and advisable

Case 1:07-cv-00318-S-DLM Document 1 Filed 08/22/2007 Page 5 of 10

> in construing this Agreement or making any decision with reference to any breach thereof. However, the Arbitrator shall have no authority to add to, detract from, modify or disregard, any of the provisions of this Agreement. The decision and/or award of the Arbitrator shall be final and binding on both parties.

Section 12.4 confers a rather broad jurisdictional grant to the grievance arbitrator as not only may he render the typical "decision, award and finding" but he may also "issue any mandatory directions, orders, and prohibitions as he may deem necessary and advisable in construing this Agreement..."

The Union's grievance provides as follows:

> The Company (BLB Enterprises) owners of Lincoln Park have established and continue to staff players club positions in violation of Articles 1, 4, 5, and 15 and all other pertinent provisions of the contract between said Company and SEIU Local 334.
>
> Remedy –
>
> Include positions into the locals bargaining unit. Make the union and its members whole. Cease and desist action of hiring non union members for these positions. Negotiate in good faith.

Article 1 (**RECOGNITION**), cited in the grievance, provides as follows:

> 1.1 The Employer recognizes the Union as the exclusive bargaining representative for all employees covered by the terms of this agreement, employed in the Mutuel Department and all auditors and validators in the Gaming Department at the Employer's Lincoln, Rhode Island facility, excluding the Mutuel Manager, the Assistant to the Mutuel Manager, the Head Cashier, office clerical employees, Gaming managers and all Gaming Department employees

who are not validators or auditors.

1.2 Employees not in any of the bargaining classifications shall not accrue seniority.

1.3 Employees excluded from the bargaining unit shall not perform bargaining unit work except in emergency situations, or for the purpose of training or instructing new employees. Management shall not purposely under-schedule sufficient bargaining unit personnel to service the level of activity reasonably anticipated and rely on non-bargaining unit personnel to supplement the bargaining unit personnel scheduled to work.

1.4 Either the Auditing Manager or an Assistant Auditing Manager will continue to count money as part of their supervisory responsibilities. This is the only exception to Article 1.3.

The Union's grievance properly cites the Recognition article as its allegation is that non-bargaining unit employees are performing bargaining unit work which assignment is restricted by the terms of Section 1.3. Pursuant to Section 12.4 terms, the arbitrator is empowered to determine whether or not non-bargaining unit employees are performing bargaining unit work. Similarly, the arbitrator may decide that if such employees are performing bargaining unit work, whether or not an emergency or a training exercise exists, or if bargaining unit employees are intentionally understaffed, and the appropriate relief if a breach occurred.

Article 4 (**<u>WAGES & HOURS OF WORK</u>**) also cited in the Union's

grievance provides in pertinent part as follows:

> (a) Employees in the classification listed in Article 38 shall be paid the wage rates specified. All employees covered by terms of this Agreement shall work a four (4) our minimum.
>
> (b) Mutuels – Clerks will be paid 15 minutes before the start of their shift if they punch in eight (8) minutes early and 15 minutes after the completion of their shift.
>
> (c) Gaming/Day shift – Validators will be paid 15 minutes before the start of their shift and 15 minutes after the completion of their shift.
> Gaming/Evening shift – Validators will be paid 15 minutes before the start of their shift and 30 minutes after the completion of their shift. Once an employee begins working his shift in Gaming he will work his entire shift. This is exclusive of Article 4.1d

Article 4(a) refers to Article 38 classifications. Article 38 (**WAGE RATES**) include various classifications of work and their compensation as follows:

| | 2/1/03 | 2/1/04 | 2/1/05 | 2/1/06 |
|---|---|---|---|---|
| ASSISTANT HEAD CASHIER | $20.25 | $20.55 | $20.85 | $21.15 |
| DIVISION HEAD | $20.25 | $20.55 | $20.85 | $21.15 |
| MONEY COUNTER | $18.85 | $19.15 | $19.45 | $19.75 |
| TERMINAL OPERATORS | $18.25 | $18.55 | $18.85 | $19.15 |
| TERMINAL OPERATORS, IRS | $18.25 | $18.55 | $18.85 | $19.15 |
| VALIDATORS | $12.35 | $12.75 | $13.15 | $13.55 |
| VALIDATORS\IRS | $12.35 | $12.75 | $13.15 | $13.55 |
| VALIDATOR\COMCHECK | $12.35 | $12.75 | $13.15 | $13.55 |
| VALIDATOR\TELECHECK | $12.35 | $12.75 | $13.15 | $13.55 |
| VALIDATOR\KENO | $12.35 | $12.75 | $13.15 | $13.55 |
| AUDITORS | $12.70 | $13.10 | $13.50 | $13.90 |
| CHECK CASHING | 1 hour mutuel pay | | | |

Various job classifications including Validator as well as Auditor are delineated

in Article 38. The grievance also cites Article 15 (**LABOR-SAVING METHODS AND DEVICES INCLUDING AUTOMATION**) which provides in relevant part at Section 15.4 as follows:

> In the event new categories of work result, the Employer and the Union agree to negotiate pay scales for those new categories in fair and proper relationship to those now set forth in this Agreement, with due consideration for the amount of skill required to competently fill these new positions. Proper training will be provided by management.

Based on the nature of the dispute, the Union's grievance satisfies the grievance definition in that it properly alleges a "violation, misinterpretation or a misapplication" of Articles 1, 4, 5, 15, and 38 of the collective bargaining agreement. None of the substantive contract provisions preclude grievance arbitration as to their meaning. Consequently, the arbitrator has the authority pursuant to Article 12 §12.4 to interpret contract articles cited and referenced by the Union as applied to the facts of the parties' dispute so long as he does not "add to, detract from, modify or disregard, any of the provisions of this Agreement."

By virtue of the various contract provisions specified in the grievance and delineated above, it is clear that the Union has the right, as it did with its grievance, to challenge the Employer's apparent determination that a Players Club Representative is a new and independent job classification with little or

Case 1:07-cv-00318-SLR-LMN Document 23 Filed 09/07/2007 Page 9 of 10

no similarity to the duties and responsibilities of bargaining unit Validators and Auditors. Moreover, to the extent that Players Club Representatives are deemed to be performing "new categories of work," it is significant that the parties have specifically agreed in Section 15.4 to negotiate "pay scales" for employees occupying new classifications of work in conjunction with classifications contained in the bargaining unit. Therefore, not only does the arbitrator have subject matter jurisdiction to determine whether or not the Employer has transgressed the other articles cited by the Union in its grievance, but he also has substantive jurisdiction to decide whether or not "new categories of work," if any, exist and whether or not the parties have otherwise complied with the terms of §15.4. Failure to interpret Section 15.4 and other contract provisions cited in the grievance in light of the facts presented in the parties' dispute would mean that the arbitrator is impermissibly deleting Section 15.4 and other applicable articles from the contract in refusing to arbitrate the matter. Clearly, the parties did not bargain for the arbitrator's abdication of his subject matter jurisdiction encompassing the interpretation of contract articles while applying them to the facts of the dispute.

The arbitrator has subject matter jurisdiction over the grievance. Based

on the parties' grievance definition, the arbitration term, and the substantive provisions of the articles cited by the Union in its grievance, the arbitrator has concurrent subject matter jurisdiction with the National Labor Relations Board over the issues raised in the grievance. The Employer's Motion to Dismiss is denied for all of the reasons specified above.